# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| PATRICK JAMES, | Misc. Case No.: **1:25MC00055** |
| *Petitioner*, | Underlying Action: |
| v. | *In re: First Brands* et al.[1], Case No. 25-90399 (CML) (Bankr. S.D. Tex.) (Jointly Administered) |
| LEUCADIA ASSET MANAGEMENT LLC | |
| *Respondent*. | **JUDGE CALABRESE** |

## MEMORANDUM IN SUPPORT OF PATRICK JAMES'S MOTION PURSUANT TO FED. R. CIV. P. 26 AND 45 TO QUASH FED. R. CIV. P. RULE 45 SUBPOENA *AD TESTIFICANDUM* PROPOUNDED BY LEUCADIA ASSET MANAGEMENT LLC

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................5

    A.    First Brands and the Chapter 11 Cases ..............................................5

    B.    Adversary Proceeding And Preliminary Injunction Hearing..................6

    C.    A&M Develops Factoring Procedures for Trapped Customer Cash .......8

LEGAL STANDARD.................................................................................................11

ARGUMENT ..............................................................................................................12

    A.    Complying With Subpoena Will Prejudice Mr. James.........................12

    B.    Jefferies' Subpoena Does Not Provide Sufficient Time To Comply.....14

    C.    Alternatively, a Protective Order Should Issue....................................14

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

Bogosian v. Woloohojian Realty Corp.,
  323 F.3d 55 (1st Cir. 2003) ..................................................................................11

Brown v. Hendler,
  No. 09-CV-4486, 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011) ..............................................14

CareFusion 2200, Inc. v. Entrotech Life Sci., Inc.,
  No. 15-MC-16, 2015 WL 1954587 (S.D. Ohio Apr. 29, 2015) ........................................11, 14

Crabtree v. Angie's List, Inc.,
  2017 WL 413242 (S.D. Ind. Jan. 31, 2017) ..................................................................14

Davis Companies, Inc. v. Emerald Casino, Inc.,
  No. 99-CV-6822, 2000 WL 33956686 (N.D. Ill. June 6, 2000) ...........................................12

Diversified Energy Co. PLC v. Inst. for Energy Econ. & Fin. Analysis,
  No. 23-MC-00031, 2023 WL 5831414 (N.D. Ohio Sept. 8, 2023) ........................................11

Donahoo v. Ohio Dep't of Youth Servs.,
  211 F.R.D. 303, 306 (N.D. Ohio 2002) ......................................................................14

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1038 ............................................................10

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1049 .............................................................4

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1051 ............................................................10

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 807 ..............................................................2

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 808 ............................................................10

In re First Brands Group, et al,
  25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 996 ............................................................10

First Brands Group, LLC, et al., v. Patrick James, et al.,
  25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 1 ................................................................7

First Brands Group, LLC, et al., v. Patrick James, et al.,
   25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 108 ..................................................6

First Brands Group, LLC, et al., v. Patrick James, et al.,
   25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 14 ....................................................7

First Brands Group, LLC, et al., v. Patrick James, et al.,
   25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 18 ....................................................7

First Brands Group, LLC, et al., v. Patrick James, et al.,
   25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 19 ....................................................6

Graves v. Bowles,
   419 F. App'x 640 (6th Cir. 2011) ...................................................................11, 14

Kastigar v. United States,
   406 U.S. 441 (1972) ..............................................................................................13

Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New
   York,
   No. 18-CIV-4476, 2020 WL 6742754 (S.D.N.Y. Nov. 17, 2020) .........................12

Martinez v. McGraw,
   No. 08-CV-0738, 2013 WL 12313194, at *2 (M.D. Tenn. Jan. 25, 2013).............15

Mattel, Inc. v. Walking Mountain Productions,
   353 F.3d 792 (9th Cir. 2003) ................................................................................12

Mem'l Hospice, Inc. v. Norris,
   No. 08-CV-048, 2008 WL 4844758 (N.D. Miss. Nov. 5, 2008) ............................14

In re Morganroth,
   718 F.2d 161 (6th Cir. 1983) ................................................................................13

NGOC Tran v. Chubb Grp. of Ins. Companies,
   14-CV-447 (NMK), 2015 WL 5047520 (S.D. Ohio Aug. 27, 2015) ......................14

Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine,
   No. 20-MC-30, 2020 WL 1288826 (N.D. Ohio Mar. 18, 2020) .............................11

Seattle Times Co. v. Rhinehart,
   467 U.S. 20 (1984)................................................................................................14

Sheindlin v. Brady,
   No. 121-CV-01124, 2021 WL 2310463 (S.D.N.Y. June 6, 2021) .........................12

In re Stratosphere Corp. Sec. Litig.,
   183 F.R.D. 684 (D. Nev. 1999)..............................................................................14

Thompson v. Glenmede Tr. Co.,
    No. 92-CV-5233, 1995 WL 752422 (E.D. Pa. Dec. 19, 1995).................................................13

**Statutes**

Fed. R. Civ. P. 12 ...........................................................................................................................6

Fed. R. Civ. P. 26 ................................................................................................................1, 2, 14

Fed. R. Civ. P. 45 ................................................................................................................1, 2, 11

Federal Rules of Bankruptcy Procedure Rule 2004 ....................................................................1, 2

**Other Authorities**

Alexander Gladstone and Alicia McElhaney, *Bankrupt Auto Supplier First
    Brands Faces Criminal Investigation*, Wall St. J. (Oct. 9, 2025), ..........................................13

Alexander Gladstone & Lauren Thomas, *How Jefferies Found Itself at the Center
    of First Brands' Collapse*, Wall St. J. (Oct. 15, 2025),
    https://www.wsj.com/finance/how-jefferies-found-itself-at-the-center-of-first-
    brands-collapse-290f0a74 ........................................................................................................3

Alexander Gladstone & Margot Patrick, *First Brands Boss Resigns and Jefferies
    Seeks to Calm Its Investors*, Wall St. J. (Oct. 13, 2025),
    https://www.wsj.com/finance/first-brands-ceo-patrick-james-resigns-cc41acab .....................4

Letter from Rich Handler, CEO, and Brian Friedman, President, Jefferies Fin.
    Grp., Inc., *Jefferies Provides Letter from Its CEO and President Regarding
    Point Bonita Capital and First Brands Group* (Oct. 12, 2025),
    https://www.jefferies.com/about/leadership-letters/jefferies-provides-letter-
    from-its-ceo-and-president-regarding-point-bonita-capital-and-first-brands-
    group/ ........................................................................................................................................3

Petitioner Patrick James (the "**Petitioner**" or "**Mr. James**") files this motion ("**Motion**") pursuant to Fed. R. Civ. P. Rules 26 and 45 (a) to quash the subpoena *ad testificandum* ("**Subpoena**") for his deposition on January 9, 2026, propounded by Leucadia Asset Management LLC, which is an affiliate of Jefferies Financial Group Inc. (the "**Respondent**" or "**Jefferies**"[2]), pursuant to Fed. R. Civ. P. Rule 45 in connection with the chapter 11 cases styled In re First Brands Group, et al., No. 25-90399 (Bankr. S.D. Tex.) (CML) (Jointly Administered) or alternatively (b) for a protective order preventing Jefferies from taking Mr. James' deposition.  Given Jefferies seeks Mr. James' deposition on January 9, 2026, Petitioner respectfully requests a decision at the Court's first convenience.

## INTRODUCTION

Mr. James' application to the United States District Court for the Northern District of Ohio relates to bankruptcy cases commenced between September 24 and September 28, 2025 under chapter 11 of title 11 of the United States Code by First Brands Group and its affiliated debtors and debtors in possession (collectively, "**First Brands**," the "**Company**," or the "**Debtors**") pending before the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").  The chapter 11 cases bear the caption In re First Brands Group, et al., Ch. 11 Case No. 25-90399 (Jointly Administered) (CML) (Bankr. S.D. Tex.) (the "**Chapter 11 Cases**").  Mr. James also is subject to an adversary proceeding the Debtors filed against him and certain entities bearing the caption First Brands Group, LLC, et al. v. Patrick James, et al. (In re First Brands Group, et al.), Adv. Proc. No. 25-3803 (CML) (Bankr. S.D. Tex.) (the "**Adversary Proceeding**").  Also in the Bankruptcy Cases, the Official Committee of Unsecured Creditors in

---

[2]   See Jefferies' Second Amended Notice of Appearance and Demand for Service of Papers, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 704 (noting "Leucadia Asset Management LLC, LAM Trade Finance Group LLC, LAM Trade Finance Group II LLC, and LAM TFG I SPV LLC" are "affiliates and associated funds") (attached hereto as **Exhibit 1**).

the Chapter 11 Cases (the "**Committee**") served subpoenas under Rule 2004 of the Federal Rules of Bankruptcy Procedure on Mr. James and fifty-five (55) entities related to him containing more than 600 individual requests for production that he since has moved to quash.[3] These discovery campaigns overlap with a forthcoming investigation from an examiner appointed by the Bankruptcy Court (the "**Examiner**") that will soon commence as well as a criminal investigation the United States government is conducting. The Northern District of Ohio is the proper forum for Mr. James' Motion because he is domiciled in this District, and the Subpoena purports to require his attendance for a deposition in Cleveland, Ohio.

Mr. James founded First Brands over a decade ago and served as its CEO until October 13, 2025. He left the Company on that date and has since played no role in administering the Company's Chapter 11 Cases. On December 1, 2025, the Debtors filed the so-called "Factoring Procedures Motion"[4] requesting Bankruptcy-Court approval of procedures developed by their retained financial advisors, Alvarez & Marsal ("**A&M**"), as part of their effort to reconcile irregularities with respect to factoring invoices. The Factoring Procedures Motion states that "[s]ince the Petition Date, A&M has undertaken significant efforts to investigate and understand the Company's historical Third-Party Factoring practices and liabilities"[5] and learned that significant amounts of cash had been trapped with customers because of confusion over factoring

---

[3]   See Motion Of Patrick James And Certain Entities Pursuant To Fed. R. Civ. P. 26 And 45, Fed. R. Bank. P. 7026 And 9016, And L.R. Bankr. P. 2004-1 And 9013-1 Either (A) To Quash Fed. R. Bankr. P. Rule 2004 Subpoenas Duces Tecum Propounded By Official Committee Of Unsecured Creditors Or (B) Alternatively For A Protective Order, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 914 (attached hereto as **Exhibit 2**); see also Reply in Support of Mot. To Quash, Dkt. No. 1034 (attached hereto as **Exhibit 3**).

[4]   Motion Of Debtors For Order (I) Establishing Third-Party Factoring Procedures For (A) The Review And Reconciliation Of The Debtors' Receipts, And (B) The Release Of Funds To The Debtors' Estates And The Third-Party Factors; (II) Authorizing Customers To Remit Receivables Without Liability And (III) Granting Related Relief, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 807 (the "**Factoring Procedures Motion**") (attached hereto as **Exhibit 4**).

[5]   Ex. 4, Factoring Procedures Mot. ¶ 2.

invoices. According to the Debtors, the Company needs that cash to finance the Chapter 11 Cases. They therefore seek approval of A&M's reconciliation procedures and authority to use those funds that were being withheld by customers because of confusion over invoices.[6] Mr. James played no role in crafting the reconciliation procedures and had since left the Company when A&M performed much of its work relating to the trapped customer funds. Notably, neither the Debtors nor any other parties who have taken a position on the Factoring Procedures Motion has said anything about Mr. James, including other factors, e.g., Katsumi Servicing, LLC ("**Katsumi**"), that oppose the Factoring Procedures Motion. Jefferies is the only party objecting to the Factoring Procedures Motion to do so.

Through its asset management arm, Leucadia, and its Point Bonita Capital Fund LLC and other related entities, Jefferies is one of First Brands' largest financiers, holding approximately $715 million in accounts receivable and earning substantial fees through arrangements.[7] Jefferies was the underwriter of a $300 million loan to First Brands.[8] Jefferies also had a leading role First Brands' global refinancing process in 2025.[9] In addition, Jefferies, as the successor to Credit Suisse AG, Cayman Island Branch, also served as administrative agent and collateral agent for

---

[6]  Ex. 4, Factoring Procedures Mot. ¶ 4.

[7]  See Alexander Gladstone & Lauren Thomas, How Jefferies Found Itself at the Center of the First Brands' Collapse, Wall St. J. (Oct. 16, 2025), https://www.wsj.com/finance/how-jefferies-found-itselfat-the-center-of-first-brands-collapse-290f0a74 ("First Brands made near-daily payments to Point Bonita for years, as customers paid invoices on the roughly $715 million in accounts receivable that Point Bonita held. Jefferies had roughly $45 million of Point Bonita exposure while the fund's other investors including BlackRock and Morgan Stanley's asset-management arm held the rest. The group had been hoping to get back $900 million on the $715 million bet.") (attached hereto as **Exhibit 5**).

[8]  Letter from Rich Handler, CEO, and Brian Friedman, President, Jefferies Fin. Grp., Inc., Jefferies Provides Letter from Its CEO and President Regarding Point Bonita Capital and First Brands Group (Oct. 12, 2025) https://www.jefferies.com/about/leadership-letters/jefferies-provides-letter-from-its-ceo-and-president-regarding-point-bonita-capital-and-first-brands-group/ (attached hereto as **Exhibit 6**).

[9]  See Declaration Of Charles M. Moore In Support Of Debtors' Chapter 11 Petitions ¶¶ 13–15, 79, 81–82, 92, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 22 (the "**Moore Decl.**") (attached hereto as **Exhibit 7**).

3

First Brands' First Lien Term Loan Agreement.[10]  Notwithstanding these multiple relationships with First Brands, Jefferies has portrayed itself as a hapless First Brands "victim."[11]  Feigning a need for information to prosecute its objection to the Factoring Procedures Motion, Jefferies intends to misappropriate that dispute to depose Mr. James and further its narrative.  It contends Mr. James' role as CEO to First Brands before the bankruptcy cases justifies taking his deposition with respect to the Factoring Procedures Motion.  But as noted, Mr. James played no part in developing the procedures at issue in the Factoring Procedures Motion.  What is more, the record adduced to date in the Chapter 11 Cases and the Adversary Proceeding does not support Jefferies' argument that Mr. James' testimony is relevant.  In the Adversary Proceeding, the Debtors requested a preliminary injunction freezing Mr. James' assets.  The Bankruptcy Court denied that application noting, among other things, that during the hearing on the preliminary injunction, the Debtors failed to connect Mr. James directly to any alleged fraud involving factoring invoices.

Mr. James faces a real prospect of prejudice should he be compelled to sit a deposition.  *First,* in the Debtors' Adversary Proceeding against Mr. James, depositions will commence in February and March 2026.[12]  *Second*, the Examiner will soon start its own investigation into same transactions at issue in the Adversary Proceeding—*e.g.*, those involving insiders like Mr. James,

---

[10]  Ex. 7, Moore Decl. ¶ 41.

[11]  See Alexander Gladstone & Margot Patrick, First Brands Boss Resigns and Jefferies Seeks to Calm Its Investors, Wall St. J. (Oct. 13, 2025), https://www.wsj.com/finance/first-brands-ceo-patrick-james-resigns-cc41acab (attached hereto as Exhibit 8); see also Leucadia's Objection to Debtors' Factoring Procedures Motion, at ¶ 1, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1049 ("The Debtors have admitted that they committed a massive fraud on the LAM Parties and other Third-Party Factors. They acknowledge that many of the receivables they sold were fake or inflated, meaning that they stole hundreds of millions from LAM alone and billions in total from the Third-Party Factors.") ("Leucadia Objection") (attached hereto as Exhibit 9).

[12]  Joint Statement Regarding Scheduling Proposals and Discovery, at ¶ 5, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 97 (attached hereto as Exhibit 10).

factoring facilities, and off-balance-sheet financing.[13] *Third,* the United States government is conducting an overlapping criminal investigation into First Brands, which raises weighty Fifth-Amendment issues with respect to Mr. James. *Fourth,* the Committee served wide-ranging discovery on Mr. James. Absent relief through the Motion to Quash the Committee's discovery (scheduled for oral argument before the Bankruptcy Court on January 7, 2026), Mr. James will be exposed to a fourth discovery front. Accordingly, the Motion seeks straightforward relief: protection from an unwarranted deposition that has no bearing on Jefferies' underlying dispute with the Debtors and will prejudice Mr. James. Mr. James respectfully requests that the Subpoena be quashed or alternatively a protective order issue preventing the deposition.

## BACKGROUND

### A.     First Brands and the Chapter 11 Cases

Mr. James built First Brands over the last two decades. It is a vertically-integrated global manufacturer and supplier of automotive parts that spans five continents and employs 26,000 people.[14] It has twenty-five well-known brands and exclusively supplies the auto industry's largest after-market customers, including well-known automotive retailers (Napa Auto Parts, AutoZone, O'Reilly, and Advanced Auto Parts), national retailers (Walmart and Costco), and original equipment manufacturers (OEMs). Even though the Company faced a combination of the COVID-19 global pandemic, supply-chain disruptions, and increasing interest rates, its sales still grew from $500 million in 2018 to $5 billion in 2024. Between September 24, 2025, and

---

[13] See Order Directing Appointment of Examiner, at ¶ 3, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 726 (directing Examiner to review "Debtors' prepetition factoring processes and factoring transactions," including "[t]ransactions and/or transfers between any of (A) the Debtors, (B) any insiders or affiliates of the Debtors, and (C) entities owned or controlled by an insider or affiliates, and (D) the unaffiliated third party factors;" as well as "any transactions and/or transfers in connection" with "the Debtors' Off-Balance Sheet Financing Transactions") (attached hereto as **Exhibit 11**).

[14] See, e.g., **Ex. 7**, Moore Decl. ¶¶ 8-10.

September 28, 2025, the Debtors commenced the Chapter 11 Cases.  The Company's challenges do not stem from its product offerings or changes in consumer demand.  Instead, external forces— tariffs in particular—constrained liquidity.[15]  Certain products were tariffed at rates as high as 73%, and tariffs led to landed inventory cost increases of approximately $99 million between April and August 2025.[16]

### B.    Adversary Proceeding And Preliminary Injunction Hearing

On November 3, 2025, the Debtors filed an eight-count Complaint[17] against Mr. James and other related parties asserting that he and certain entities related to him are responsible for a series of avoidable transfers and that they, among other things, (a) "induced third-party lenders to lend to First Brands irrespective of its true financial condition to bring more money into First Brands only so that portions of it could be siphoned away into Defendants' accounts for the personal use" and (b) "caused First Brands to incur at least $2.3 billion in accounts receivable factoring liabilities based, at least in significant part, on non-existent or doctored invoices."[18]  The allegations in the Complaint are based heavily "upon information and belief."[19]  The Complaint further suffers from

---

[15] See id. ¶ 12 ("[I]n recent months geopolitical uncertainty and headwinds from newly imposed tariffs have pressurized global supply chains and layered additional complications to the Company's Operations .... At the same time, the Company faced mounting funded debt and lease obligations between May and August 2025, particularly with respect to its equipment and inventory lessor, Onset. These factors snowballed into a liquidity crisis . . . .").

[16] Id. ¶¶ 74-75.

[17] The eight counts are Count 1: Turnover Of Estate Property Pursuant to 11 U.S.C. § 542); Count 2: Actual Fraudulent Transfer Pursuant To 11 U.S.C. §§ 548(a)(1)(A), 544(b), Ohio Rev. Code Ann. §§ 1336.04(A)(1), 6 Del. Code § 1304(a)(1); Count 3: Constructive Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 544(b), Ohio Rev. Code Ann. §§ 1336.04(A)(2), 6 Del. Code § 1304(a)(2); Count 4: Money Had and Received; Count 5: Unjust Enrichment; Count 6: Constructive Trust; Count 7: Accounting; Count 8: Illegal Dividend Pursuant to 8 Del.C. § 160 and 8 Del.C. § 174. See Complaint, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt. No. 1 ("Complaint") (attached hereto as Exhibit 12).

[18] Ex. 12, Compl. at ¶¶ 5, 46, 100.

[19] See Aff. of Charles Moore, Interim Chief Executive Officer In Supp. Of Debtors' Emergency Appl. For Prelim. Inj. Relief Including Emergency Mot. For TRO, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 19 (attached hereto as Exhibit 13); see also id. ¶¶ 27, 35 (allegations subject to "ongoing" investigation); id. ¶¶ 26, 28, 29, 30, 31, 34, 35, 37, 39, 40, 45, 46, 47, 51, 52, 53, 55, 56, 58

various legal and factual deficiencies, and Mr. James and the related entity defendants have moved to dismiss it.[20]

When they filed the Complaint, the Debtors submitted an ex parte application seeking, among other things, a temporary restraining order and preliminary injunction "freezing the assets of Patrick James and any and all companies he owns and controls in connection with the misappropriation and potential dissipation of funds belonging to the Debtors' estates."[21]  The Court issued a TRO the same day.[22]  On November 10, 2025, the Court held a hearing on the Debtors' request for a preliminary injunction,[23] allegedly supported by their review of millions of pages of documents.[24]  On November 12, 2025, the Court denied the preliminary injunction,[25] finding, among other things, that there was no evidence of likelihood of success on the merits for several of the defendants for any claim; there was no substantial threat of irreparable injury; and the balance of harms and public policy weighed in the defendants' favor.

---

(allegations on "information and belief"); *see also* Ex. **12**, Compl. ¶¶ 10, 11, 17, 26, 27, 34(b), 34(c)–(i), 55, 58, 59, 60, 64, 65, 68, 70, 71, 77, 78, 79, 82, 83, 84, 86, 87, 89, 100, 101, 114 (allegations on "information and belief"); *id.* ¶ 15 ("currently believe").

[20]  See Defendants' Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) The Debtors' Complaint For Failure To State A Claim, Or, Alternatively, Pursuant To Fed. R. Civ. P. 12(e) For A More Definite Statement, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 108 (attached hereto as **Exhibit 14**).

[21]  *See* Debtors' Emergency Ex Parte Appl. for Prelim. Inj. Relief, Including an Emergency Mot. for a Temporary Restraining Order ("**TRO**"), Prelim. Inj., and Request for Hearing, at ¶ 5, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 18 (attached hereto as **Exhibit 15**).

[22]  *See* Order Granting TRO, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.), Dkt No. 14 (attached hereto as **Exhibit 16**).

[23]  *See* Transcript of Hearing on Preliminary Injunction, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.) ("**PI Hearing Transcript**") (attached hereto as **Exhibit 17**).

[24]  See id. at 32:18-20 ("[DEBTORS' COUNSEL:] And was the scope of the documents collected and under review millions of documents?  [CRO] Yes.").

[25]  See Transcript of Hearing Denying Preliminary Injunction, at 24:3–5, 27:14–24, 29:15, 30:3–7, 31:1–3, First Brands Group, LLC, et al., v. Patrick James, et al., 25-03803 (CML) (Bankr. S.D. Tex.) ("**PI Decision Transcript**") (attached hereto as **Exhibit 18**).

Other than alleging in conclusory fashion that Mr. James' "and his co-conspirators' activities included" issuing "erroneous or fabricated invoices in connection with accounts receivable factoring activities" or that "upon information and belief" this happened at Mr. James' direction, the Complaint does not connect Mr. James to the factoring.[26]  Nor did evidence at the preliminary-injunction hearing connect Mr. James to supposedly manipulating invoices.[27]  The evidence did show that in some instances the invoices were not altered or were actually lower. The evidence also showed that the factors themselves made changes to the schedules containing the allegedly changed invoices.[28]  And as recently as mid-December, the Debtors' declarant whose testimony is being used to support the Factoring Procedures Motion also could not identify a specific party that allegedly prepared fraudulent factoring invoices.[29]

### C.    A&M Develops Factoring Procedures for Trapped Customer Cash

On December 1, 2025, the Debtors filed the Factoring Procedures Motion.  According to the Motion:

---

[26]  Ex. 12, Compl. ¶¶ 45, 55; see, e.g., id. ¶¶ 37, 47–55.

[27]  See Ex. 18, PI Decision Transcript at 23:8–15 ("In James' defense, there's nothing I saw where he's personally directing anyone to do anything.  There are messages from parties indicating he is aware and messages between parties saying James wants funds transferred.  I'm not sure what all that means yet.  There's nothing showing that James, himself, was manipulating invoices, but it is clear First Brands was moving tens of millions of dollars through unaffiliated accounts.").

[28]  See Ex. 17, PI Hearing Transcript at 61:14–20 ("[DEBTORS' COUNSEL:]  And so that's an instance where the invoice number was not inflated . . . .  Were there also some instances in the nomination packet sent to ... third-party factors where there was no change reflected in the invoice value?  [CRO:]  Yes."); id. at 62:7–12 ("[DEBTORS' COUNSEL:]  So we've now seen examples of invoices that were increased at significant proportions, and we've seen examples of invoices that were decreased, and we've seen at least one example where the invoice stayed the same"); id. at 129:19–22 ("[DEBTORS' COUNSEL:]  And so the schedule that you testified about today was the schedule that [factor representative] attached to her email.  Correct? [CRO:]  Yes..... She updated the file that he had sent for the specific areas that she mentioned.").

[29]  See Statement Of Katsumi Servicing, LLC And Request For Appropriate Limitations Related To Appointment Of Examiner at ¶ 1, 1 n. 2, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1120 ("Q. What was the process by which First Brands fabricated invoices? A. I don't know. Q. Which particular individuals were involved in fabricating invoices? A. I still don't know. Q. To your knowledge have any current or former employees explained how the invoices were fabricated? A. No. Not to my knowledge." (quoting December 19, 2025 Transcript of Rule 30(b)(6) Deposition of Debtors Regarding Third-Party Factoring Procedures Motion (deponent, Dan Jerneycic, Co-CRO), at 34:11–20)) (attached hereto as Exhibit 19).

- "In addition to the issues uncovered by the initial stages of A&M's investigation, it has come to the Debtors' attention that many of the Third-Party Factors sent prepetition notices to the Customers directing payment of their purchased receivables to accounts controlled by such Third-Party Factor, rather than to the Company-account that payments were historically made. This has created significant confusion among the Customers as to which receivables have been factored (and with which Third-Party Factor) and which receivables have not been factored, resulting in some Customers withholding all payments owed to the Debtors. A&M estimates a significant amount of money (approximately $150 million) is being withheld from the Debtors by Customers on account of outstanding accounts receivable related to invoices that have no evidence of ever being factored. These funds are property of the Debtors' estates (and constitute Collateral (as defined in the Final DIP Order)) and are desperately needed to maintain operations, finance new inventory purchases, and otherwise alleviate the strain on the Debtors' already-tenuous Customer and vendor relationships."[30]

- "To allow for a reconciliation process ... the Debtors segregated and held all collections received from Customers since the Petition Date (the 'Collected Receipts'), other than funds received on account of any postpetition sales or related invoices, including receipts of accounts receivables of any Factoring Facility (the 'Factored Receivables') and receipts of non-factored accounts receivables (the 'Non-Factored Receivables') .... However, holding all Collected Receipts forces the Debtors' business into an extremely fragile predicament, where the Debtors must expend resources to operate the business to generate postpetition sales for the estate, without being able to access the funds generated from Collected Receipts. This practice has put a significant strain on the Debtors' operations and liquidity forecast, which assumed the Debtors would have access to such funds to operate."[31]

- "In order to restart the flow of funds in a fully transparent manner, A&M deployed a team to conduct a forensic audit and investigate the Third-Party Factoring transactions. A&M developed a rigorous reconciliation process to determine if Collected Receipts were on account of invoices claimed to have been purchased by any of the Third-Party Factors. As part of this process, A&M worked collaboratively with the Third-Party Factors to obtain their internal data regarding purchased invoices, which was then compared to the Company's books and records, as verified by A&M. Additionally, the Debtors' advisors have maintained close coordination and met regularly with the Third-Party Factors to discuss the status of A&M's reconciliation efforts."[32]

- "Without near term access to these Non-Factored Receivables, the Debtors will face tremendous liquidity pressure .... The Debtors have worked to design a transparent process ... for funds to be properly collected, segregated, reconciled, and distributed, all under the purview of the Court and with the opportunity for Third-Party Factors to review the

---

[30] Ex. 4, Factoring Procedures Mot. ¶ 4.

[31] Id. ¶ 5.

[32] Id. ¶ 6.

Debtors' work and raise any issues before funds are released. The Debtors shared the proposed Third-Party Factoring Procedures with the Creditors' Committee and the Third-Party Factors to solicit input and provide an opportunity for any concerns to be addressed. A&M also presented its reconciliation process and preliminary findings to the Third-Party Factors [and] the Third-Party Factors' advisors ... to allow the Third-Party Factors to ask any questions, offer input, and better understand A&M's analysis."[33]

- The Debtors ask the Bankruptcy Court to "(i) establish procedures for the Debtors to complete an orderly, efficient, and fair reconciliation of all Collected Receipts, (ii) authorize and provide comfort to Customers to remit receivables to the Debtors without risk of double payment liability, [and] (iii) authorize the Debtors to use Collected Receipts that were not factored following notice to and an opportunity to be heard by the Third-Party Factors."[34]

The Factoring Procedures Motion makes clear that Mr. James had no involvement with the A&M investigation.[35] A&M performed this analysis without Mr. James' input. While Mr. James has not weighed in on the Factoring Procedures Motion, several parties have objected to the motion.[36] And among them, the only one seeking discovery of Mr. James is Jefferies. Moreover, the Leucadia Objection does not make a case to involve Mr. James in the Factoring Procedures Motion or their objection. It mentions him in passing in a single paragraph referring to allegations

---

[33] Id. ¶¶ 8–9.

[34] Id. ¶ 10.

[35] See Declaration Of Daniel Jerneycic In Support Of Factoring Procedures Motion, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 808 (attached hereto as **Exhibit 20**); see also Supplemental Declaration of Daniel Jerneycic In Support Of Factoring Procedures Motion, In re First Brands Group, et al., 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 996 ("**Suppl. Decl.**") (attached hereto as **Exhibit 21**). See, e.g., Suppl Decl. at ¶¶ 17–19 ("A&M and Weil have responded to multiple formal and informal diligence requests from the Third-Party Factors for information pertaining to the mapping of invoices and the Cash Application Process generally, and I understand, Weil has produced approximately 800 documents to certain Third-Party Factors who have requested such additional information .... Additionally, A&M and Weil have also provided (i) weekly reporting of the amount of the Collected Receipts and (ii) a bi-weekly report detailing the Collected Receipts and corresponding invoices. Finally, the Debtors have provided ... Third-Party Factors' advisors the Company's records used in A&M's reconciliation, so that the applicable advisors can replicate and verify A&M's analysis for themselves.").

[36] See, e.g., Katsumi's Objection to Debtors' Factoring Procedures Motion, at ¶ 1, In re First Brands Group, et al. 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1038 (attached hereto as **Exhibit 22**); see also Ex. 9, Leucadia Obj. ¶ 1.

against Mr. James in the Adversary Proceeding.[37] Also, the Leucadia Objection actually argues certain invoices were *not* falsified.[38] Moreover, the funds that the Factoring Procedures Motion is designed to address (and "unfreeze") are the so-called "Non-Factored Receivables"—not alleged improprieties with the Jefferies Factored Receivables. Consequently, the Factoring Procedures Motion does not concern any alleged improprieties with the Jefferies' factored receivables.

## LEGAL STANDARD

"Rule 45(d)(3)(A) requires that a court quash or modify a subpoena that '(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *CareFusion 2200, Inc. v. Entrotech Life Sci., Inc.*, No. 15-MC-16, 2015 WL 1954587, at *2 (S.D. Ohio Apr. 29, 2015). Here, the Motion is properly filed in the Northern District of Ohio because "the Northern District of Ohio is the place of compliance[.]" *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, No. 20-MC-30, 2020 WL 1288826, at *1, n.1 (N.D. Ohio Mar. 18, 2020); *see also Diversified Energy Co. PLC v. Inst. for Energy Econ. & Fin. Analysis*, No. 23-MC-00031, 2023 WL 5831414, at *3, n.2 (N.D. Ohio Sept. 8, 2023) ("A person seeking to enforce . . . a subpoena must do so in 'the court for the district where compliance is required.'" (quoting Fed. R. Civ. P. 45(d)(3)(A))).

---

[37] See Ex. 9, Leucadia Obj. ¶ 21 ("On November 3, 2025, in connection with an adversary proceeding filed on that date against their founder and former CEO, Patrick James, Mr. Moore submitted a further declaration admitting that the Debtors not only double-pledged receivables, but also inflated and "fabricated and sold non-existent receivables to unsuspecting third parties," including LAM TFG. Dkt. 17 in Adv. Pro. No. 25-03803 ¶¶ 51-55").

[38] See Declaration of Frank Derby in Support of Leucadia Asset Management LLC, Acting Through Its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM Trade Finance Group II LLC's Objection to Debtors' Factoring Procedures Motion, at ¶ 17, In re First Brands Group, et al. 25-90399 (CML) (Bankr. S.D. Tex.), Dkt. No. 1051 (alleging "that at least some 'falsified' invoices that do not match under the Debtors' proposed procedures are based on real invoices.") (attached hereto as Exhibit 23); id. ¶ 21 ("I believe that the data and documents currently available are inadequate for making a reliable determination as to whether there are meaningful connections or linkages between the Debtors' legitimate invoice records and those purchased by the LAM Parties, and that a process based solely on comparing invoice numbers may overlook important facts and context that, after access to additional information is obtained, could support a different conclusion.").

## ARGUMENT

### A.    Complying With Subpoena Will Prejudice Mr. James

A court "must quash or modify a subpoena that ... subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).  In assessing whether a there is undue burden caused by a subpoena, courts examine whether the scope of the deponent's relevant knowledge and quash subpoenas where a witness has "no personal knowledge of the events or investigation underlying the case." Graves v. Bowles, 419 F. App'x 640, 645 (6th Cir. 2011).  Courts also consider whether a subpoena was issued to harass a deponent.  See Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003) (examining whether "subpoena was issued primarily for purposes of harassment"); Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 814 (9th Cir. 2003) (quashing subpoena "served for the purpose of annoying and harassment").

Compliance with the Subpoena will impose undue burden on Mr. James.  *First,* the Subpoena is seemingly retaliatory: Jefferies supposedly issued the Subpoena seeking information relevant to the Factoring Procedures Motion—but requested that deposition shortly after Mr. James served discovery on Jefferies in connection with the Adversary Proceeding.  No other objector to the Factoring Procedures Motion has sought Mr. James' deposition, presumably because Mr. James has no relevant information about procedures he did not develop or supervise.  Courts routinely recognize that subpoenas served under similar circumstances suggesting retaliation or harassment must be quashed.  Molefi v. Oppenheimer Tr., No. 03-CV-5631, 2007 WL 538547, at *4 (E.D.N.Y. Feb. 15, 2007) (quashing subpoena where the "circumstances surrounding the issuance of the subpoena" supported a "theory of retaliation"); Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York, No. 18-CV-4476, 2020 WL 6742754, at *2–3 (S.D.N.Y. Nov. 17, 2020) (quashing subpoena seeking irrelevant information where party argued that the subpoena's real purpose was retaliation).

12

*Second,* information relevant to the Factoring Procedures Motion rests with the Debtors, and particularly their financial advisors (A&M)—not with Mr. James.[39] See Sheindlin v. Brady, No. 21-CV-01124, 2021 WL 2310463, at *3 (S.D.N.Y. June 6, 2021) ("[A]llegations . . . lacking any shred of substantiation . . . cannot serve as the basis for subjecting an otherwise irrelevant nonparty to the burden of a subpoena"); Thompson v. Glenmede Tr. Co., No. 92-CV-5233, 1995 WL 752422, at *2 (E.D. Pa. Dec. 19, 1995) ("Thus, the requested information/documents in the subpoena must be relevant to the subject matter involved in the pending action." (quotation marks omitted)).

*Third,* Mr. James is already being sued by the Debtors with respect to the factoring and the subject of ongoing discovery in the Adversary Proceeding.  He faces depositions in that proceeding, investigation by the Court-appointed Examiner, and a barrage of discovery from the Committee that he is trying to quash.

*Finally,* Jefferies is well aware of the existence of an ongoing federal criminal investigation concerning, among other things, the facts underlying the Factoring Procedures Motion.[40]  It knows that Mr. James will likely invoke his Fifth Amendment right against self-incrimination and decline to answer questions that he "reasonably believes could be used in a criminal prosecution or could lead to other evidence which might be so used." Kastigar v. United States, 406 U.S. 441, 445 (1972); see also In re Morganroth, 718 F.2d 161, 164-65 (6th Cir. 1983) ("The Fifth Amendment privilege" includes the "privilege[] . . . not to answer questions . . . in any other proceeding, civil

---

[39] See, e.g., Exhibit 21, Suppl. Decl. ¶¶ 17–19 ("Weil has produced approximately 800 documents to certain Third-Party Factors who have requested such additional information .... Additionally, A&M and Weil have also provided (i) weekly reporting of the amount of the Collected Receipts and (ii) a bi-weekly report detailing the Collected Receipts and corresponding invoices").

[40] See e.g., Alexander Gladstone & Alicia McElhaney, Bankrupt Auto Supplier First Brands Faces Criminal Investigation, Wall St. J. (Oct. 9, 2025), https://www.wsj.com/articles/first-brands-creditor-raistone-seeks-probe-into-vanished-2-3-billion-5ae03547.

or criminal, formal or informal[.]"). A deposition of Mr. James is unlikely to reveal the evidence Jefferies allegedly seeks. *Graves*, 419 F. App'x at 645 (preventing deposition where the deponent had no personal knowledge about the relevant events).

**B.     Jefferies' Subpoena Does Not Provide Sufficient Time To Comply**

Here, Jefferies' Subpoena does not provide reasonable notice. The Subpoena seeks to depose Mr. James on January 9, 2026, and provided notice of that date on December 29, 2025. Courts have consistently held that such short notice is unreasonable.[41]

**C.     Alternatively, a Protective Order Should Issue**

Mr. James respectfully requests a protective order under Federal Rule of Civil Procedure 26(c)(1)(B) and (D). The Court has broad discretion to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). See also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). And, "the court must limit the frequency or extent of discovery ... if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). See, e.g., Crabtree v. Angie's List, Inc., 2017 WL 413242, at *3 (S.D. Ind. Jan. 31, 2017) ("Rule 26 requires the Court to limit discovery if it can be obtained from another source that is more convenient, less burdensome, or less expensive."). Also discovery must be "'proportional to the needs of the case.'" Id. at *3–5

---

[41] See, e.g., NGOC Tran v. Chubb Grp. of Ins. Companies, 14-CV-447 , 2015 WL 5047520, at *6 (S.D. Ohio Aug. 27, 2015) ("eleven days [notice]—only seven of which were business days—was "unreasonable"); see also Brown v. Hendler, No. 09-CV-4486, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) ("eight and seven days [may not] be reasonable."); Mem'l Hospice, Inc. v. Norris, No. 08-CV-048, 2008 WL 4844758, at *1 (N.D. Miss. Nov. 5, 2008) (eight days'); Donahoo v. Ohio Dep't of Youth Servs., 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("Deponents ... were served within one week of their deposition dates"); In re Stratosphere Corp. Sec. Litig., 183 F.R.D. 684, 687 (D. Nev. 1999) (six days' notice is not reasonable). C.f., CareFusion 2200, Inc. v. Entrotech Life Sci., Inc., 2015 WL 1954587, at *2-3 (S.D. Ohio Apr. 29, 2015) ("fourteen days from the date of service as presumptively reasonable.").

14

(request for information from electronic devices was "not proportional to the needs of the case because any benefit the data might provide is outweighed by Plaintiffs' significant privacy and confidentiality interests . . . . [T]he Court has an obligation to guard against intrusive discovery"). A protective order is also warranted where the deponent does not have "unique or special knowledge" about the issues being litigated. Martinez v. McGraw, No. 08-CV-0738, 2013 WL 12313194, at *2 (M.D. Tenn. Jan. 25, 2013).

Here, protection is warranted. Mr. James did not participate in the reconciliation procedures developed by A&M and has no relevant information, let alone "unique or special knowledge," concerning the Factoring Procedures Motion. That information rests exclusively with the Debtors and A&M, who have been supplying Third Party Factors like Jefferies with information. He also is subject to ongoing litigation in the Adversary Proceeding as well as a forthcoming investigation by the Examiner; an ongoing criminal investigation. Accordingly, Mr. James is entitled to protection from the deposition.

## **CONCLUSION**

For the foregoing reasons, Mr. James respectfully requests that the Court grant the Motion, quash the Subpoena in its entirety, and award such other relief as the Court deems appropriate.

15

Date: December 31, 2025

Respectfully submitted,

John F. McCaffrey (0039486)
Ethan W. Weber (0098871)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Tel:    216-592-5000
Fax:    216-592-5009
john.mccaffrey@tuckerellis.com
ethan.weber@tuckerellis.com

*/s/ James C. Tecce (per consent) 12-31-25*
Michael  B.  Carlinsky  (*pro  hac  vice forthcoming*)
James C. Tecce (*pro hac vice forthcoming*)
Scott Hartman (*pro hac vice forthcoming*)
Anil Makhijani (*pro hac vice forthcoming*)
Reece Pelley (*pro hac vice forthcoming*)
Mengzhou (Melissa) Fu (*pro hac vice forthcoming*)
Jack Robbins (*pro hac vice forthcoming*)
Grace Sullivan (*pro hac vice forthcoming*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
Tel:    (212) 849-7000
Fax:    (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jamestecce@quinnemanuel.com
scotthartman@quinnemanuel.com
anilmakhijani@quinnemanuel.com
reecepelley@quinnemanuel.com
melissafu@quinnemanuel.com
jackrobbins@quinnemanuel.com
gracesullivan@quinnemanuel.com

*Attorneys for Petitioner Patrick James*

16